HAROLD IVES TRUCKING COMPANY *v.* Mike PICKENS,
Insurance Commissioner for the State of Arkansas

03-361                                                    139 S.W.3d 471

Supreme Court of Arkansas
Opinion delivered December 18, 2003

*Martin, Tate, Morrow & Marston, P.C.* (Memphis), by: *Lee Piovarcy, Elizabeth J. Landrigan*, and *Shea S. Wellford*, for appellant.

*Howell, Trice, Hope & Files, P.A.*, by: *Ronald A. Hope* and *Samuel S. High*, for appellee.

Tom Glaze, Justice. This appeal requires us, for the first time, to interpret the meaning of the word "affiliate" in Ark. Code Ann. § 23-90-101 *et seq.* (Repl. 1999), known as the Arkansas Property and Casualty Insurance Guaranty Act (hereafter also referred to as the Guaranty Act or Guaranty Fund). We granted appellant Harold Ives Trucking Company, Inc.'s motion to certify the appeal to this court in order to address this question of first impression. *See* Ark. Sup. Ct. R. 1-2(b)(1).

Harold Ives Trucking Company ("Harold Ives") is an Arkansas–based corporation. In November of 1999, Harold Ives sold 100% of its stock to Covenant Transport, Inc. ("Covenant"), a Nevada corporation. In 2001, Harold Ives was insured by the Acceleration National Insurance Company ("Acceleration"). On February 28, 2001, an Ohio court declared Acceleration to be insolvent. At the time of Acceleration's insolvency, Harold Ives had ten lawsuits pending against it in a number of jurisdictions across the United States. Each of these lawsuits was covered under Harold Ives's insurance policy with Acceleration. Following the Ohio court's determination of Acceleration's insolvency, the Guaranty Fund retained counsel to provide a defense in these lawsuits and assumed coverage of the controversies in litigation.

However, on January 25, 2002, Arkansas Insurance Commissioner Mike Pickens filed a Motion to Deny Claim, alleging that Harold Ives had a net worth of over $50,000,000, causing the Guaranty Fund to not be responsible for the relevant claims involving Acceleration and Harold Ives, because those claims were not "covered claims" within the meaning of the Guaranty Act. Pickens based his argument on the fact that Covenant, which had purchased 100% of Harold Ives's stock, was an "affiliate" for purposes of the Act, and the Guaranty Fund would not cover unpaid claims of a resident insured whose net worth exceeded $50,000,000.

Subsequently, Pickens filed a motion for summary judgment on this issue, arguing that, as a matter of law, the Guaranty Fund was not liable for Harold Ives's claims. Harold Ives responded, disputing that it was an "affiliate" for purposes of the Act, and arguing that the Guaranty Fund did not apply to nonresident parties, such as Covenant. The trial court, however, granted

Pickens's motion for summary judgment, finding that Harold Ives was a wholly-owned subsidiary of Covenant, and that Covenant was an affiliate of Harold Ives, with a net worth in excess of $50,000,000. Therefore, the court concluded, the unpaid claims of Harold Ives were not covered claims as defined under § 23-90-103(2)(B) of the Act. On appeal, Harold Ives argues that the trial court erred in its interpretation of the net worth exclusion.

The Guaranty Act was enacted for the purpose of "providing funds in addition to assets of insolvent insurers for the protection of the holders of 'covered claims' . . . through payment and through contracts of reinsurance or assumption of liabilities or of substitution or otherwise." *See* § 23-90-102. A "covered claim," for purposes of this Act, is "an unpaid claim of an insured or third party claimant . . . in cases where the insurer becomes an insolvent insurer, and the third party claimant or liability claimant is a resident of this state at the time of the insured event." *See* § 23-90-103(2)(A). However, there are certain claims that are considered to be excluded or exempted under the Act; most relevant to this appeal, the Act provides as follows:

> A *"covered claim" shall not include an unpaid claim of an insured or third party liability claimant whose net worth* as of December 31 of the year next preceding the date the insurer becomes an insolvent insurer *exceeds fifty million dollars ($50,000,000)*; provided, that *an insured's or third party liability claimant's net worth on such date shall be deemed to include the aggregate net worth of the insured or third party liability claimant and all of its affiliates as calculated on a consolidated basis.*

§ 23-90-103(2)(B) (emphasis added).

Harold Ives urges this court to interpret this so-called "net worth exclusion" in such a way as to preclude making it and Covenant "affiliates" for purposes of determining Harold Ives's net worth. Pickens, as Insurance Commissioner, rejoins by pointing out that the common-sense definition of "affiliate" covers the relationship between Harold Ives and Covenant. We agree. Arkansas "has long subscribed to the notion that common sense is a key element in defining statutory construction." *See Neeve v. City of Caddo Valley*, 351 Ark. 235, 91 S.W.3d 71 (2002); *Keith v. Barrow-Hicks Extensions of Water Improv. Dist. No. 85*, 275 Ark. 28, 626 S.W.2d 951 (1982). In addition to common sense, we have consistently stated that the basic rule of statutory construction

is to give effect to the intent of the General Assembly. *Neeve, supra*; *Nations Bank v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001). This court will construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The court will construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999).

■ The specific statutory phrase in issue in this case is the proviso in § 23-90-103(2)(B), cited above, which reads as follows: "provided, that an insured's or third party liability claimant's net worth . . . shall be deemed to include the aggregate net worth of the insured or third party liability claimant *and all of its affiliates as calculated on a consolidated basis.*" (Emphasis added.) This court, then, must determine what is meant by "affiliate." The word is not defined in the statute or anywhere in the Act, but *Black's Law Dictionary* defines the word as a "corporation that is *related to another corporation by shareholdings or other means of control; a subsidiary, parent,* or sibling *corporation.*" *Black's Law Dictionary* (7th ed. 1999) (emphasis added). Other states have adopted a definition similar to this in their Guaranty Fund statutes; for example, Illinois defines an affiliate of a specified person as "a person who directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with the specified person on December 31 of the year next preceding the date the insolvent company became an insolvent company." 73 Ill. Comp. Stat. Ann. 5/534.7 (West 2003).

■■ As gleaned from accepted definitions of the word "affiliate," the fundamental question is one of control. Here, Covenant owns 100% of the shares of Harold Ives Trucking, thus making Harold Ives a wholly-owned subsidiary of its parent company, Covenant. Documents filed with the Securities and Exchange Commission indicate that in November of 1999, Covenant "purchased all of the outstanding capital stock of Harold Ives Trucking Co.," and as of December 31, 2000, Covenant's corporate structure "included . . . Harold Ives Trucking Co., an Arkansas corporation," among other corporations. These facts clearly reflect that Harold Ives is "related to another corporation by shareholdings," and, in our view, Harold Ives is an affiliate of Covenant. Further, in its responses to Pickens's requests for

admissions, Harold Ives admitted that the net worth of Covenant alone was greater than $50 million. It is plain and undisputed that Harold Ives *and its affiliates* have a net worth in excess of $50 million, and, as a result, Harold Ives's claims cannot be considered "covered claims" within the meaning of § 23-90-103(2)(B) of the Act.

In a related argument, Harold Ives suggests that the assets of an out-of-state resident should not be included in the calculation of an Arkansas claimant's net worth. In support of this contention, Harold Ives cites *Douglass v. Levi Strauss & Co.*, 315 Ark. 380, 868 S.W.2d 70 (1993), in which this court held that a nonresident corporation could not have a covered claim under this Act. The portion of the statute at issue in that case was § 23-90-103(2)(A), which states that a "covered claim" must be brought by a claimant or insured that is a "resident of this state." Because Levi Strauss & Co. was not a resident of Arkansas, this court held that its claim on the Fund could not be a covered claim, as defined in the statute. That case, however, dealt only with the definition of "resident," which is simply not a concern in the present appeal. Here, there is no question that Harold Ives — the insured — meets the residency requirements of § 23-90-103(2)(A). For the reasons discussed above, it is our holding that the claims of Harold Ives and its affiliate, Covenant, are exempt under § 23-90-103(2)(B) and are not covered under the Guaranty Act.

For its second point on appeal, Harold Ives argues that the net worth exclusion "should be interpreted in the context of its legislative history and so as not to conflict with longstanding Arkansas law." However, Harold Ives cites no Arkansas law to support its argument, but instead relies on the definition of "covered claim" found in the original Model Act adopted in 1969 by the Insolvency Committee of the National Association of Insurance Commissioners ("NAIC").[1] However, the Arkansas Guaranty Act was enacted in 1977, and while based on the Model Act, Arkansas's Act has several significant differences. For example the Model Act's definition of "covered claim" provides in relevant part as follows:

---

[1] The NAIC promulgated the model "Post-Assessment Property and Liability Insurance Guaranty Association Model Act" in 1969.

"Covered claim" shall not include . . .

Any first party claims by an insured whose net worth exceeds $25 million on December 31 of the year prior to the year in which the insurer becomes an insolvent insurer; provided that an insured's net worth on that date shall be deemed to include the aggregate net worth of the insured *and all of its subsidiaries* as calculated on a consolidated basis[.]

(Emphasis added.) Further, the definition of a "covered claim" also excludes "any first party claims by an *insured which is an affiliate of the insolvent insurer*." (Emphasis added.)

■ Harold Ives stresses these and other differences in the Model Act and the Arkansas Guaranty Act. For example, 1) the net worth limitation only applies to first-party claims by the insurer; 2) the net worth calculation is narrowly defined to include the insured and its subsidiaries, but not its shareholders, parent corporations, or affiliates; and 3) the language concerning an "affiliate" applies to a company's relationship with the insolvent insurer, not with its stockholders or related companies. Further, Harold Ives notes that the Model Act "is only concerned with issues of affiliation and control with regard to a claimant's relationship to an insolvent insurance carrier." However, we find these distinctions to be irrelevant, as our General Assembly chose not to adopt the language verbatim from the Model Act. The Model Act is not Arkansas law, and Harold Ives fails to cite any Arkansas law that contradicts the definition of "affiliate" as we have discussed and adopted above.

■ Harold Ives also raises a number of policy arguments, suggesting that it is not fair to interpret the Act to exclude third-party claims, and that this court should interpret the term "affiliate" narrowly to safeguard the rights of insureds and third-party claimants. Harold Ives also asserts that the trial court's definition of "affiliate" is overly broad, and such a broad reading is in contravention of the purpose of the Act. However, as discussed above, the trial court's definition of "affiliate" was entirely correct. The purpose of the Fund is to "provid[e] funds in addition to assets of insolvent insurers for the protection of the holders of 'covered claims[.]'" § 23-90-102. The comments to the NAIC Model Act note that the net worth exclusion was included because

the Commissioners believed "that an insured with that much net worth ought to buy insurance intelligently enough so that it would not be insured by an unsound insurer." To exclude the claims of Harold Ives, whose affiliates have a net worth in excess of $50 million, simply does not contradict the purpose or intent of the Arkansas Act, as Ives suggests.

In sum, the trial court applied a proper and accurate definition of the term "affiliate" and correctly concluded that, because Harold Ives and its affiliates had a net worth in excess of $50 million, Harold Ives's claims were not "covered claims" for the purposes of the Act. The trial court's interpretation of the Guaranty Act and its granting of Pickens's motion for summary judgment, are therefore affirmed.

ARNOLD, C.J., not participating.