The Honorable Steve Harrelson State Representative 300 North State Line Avenue Texarkana, Arkansas 71854-5926
Dear Representative Harrelson:
I am writing in response to your request for an opinion on the application of Act 489 of 2007 concerning the political activities of election commissioners. Specifically, you note that:
From section 2 (c)(1), it is clear that commissioners may not be employed by a political party or anyone appearing on the ballot in the county where they are the commissioner.
From section 2 [(c)](2)(B), it is clear that commissioners may make financial contributions to anyone appearing on the ballot in the county for which they are a commissioner.
From section 2 [(c)](3), it is clear that commissioners may not have any pending business dealings with the county for which they are a commissioner.
What is not clear is whether a commissioner may promote anyone appearing on the ballot in the county for which they are a commissioner, assuming they are not a paid employee of the candidate or political party.
For example, may a commissioner put a sign in support of County Judge Candidate A in their yard? May a commissioner put a bumper sticker in support of U.S. Senate Candidate B on their vehicle? May a commissioner make phone calls encouraging voters to support Secretary of State Candidate C? May a commissioner be a host for a fundraiser in support of State Assembly Candidate D?
RESPONSE
In my opinion the answers to your questions depend upon whether an election commissioner engaging in the different types of conduct listed above could be described as "participat[ing] in any person's campaign" for purposes of Act 489 of 2007, the pertinent part of which is now codified at A.C.A. § 7-4-109(c)(2)(A) (Supp. 2007). In my opinion, it is unclear, but doubtful whether the first two activities you mention (involving a yard sign and a bumper sticker), fall within this language. The last two activities mentioned (making phone calls on behalf of a candidate and hosting a fundraiser) are in my opinion clearly prohibited by A.C.A. § 7-4-109(c)(2)(A).
The Act you mention, Act 489 of 2007, in pertinent part, amended A.C.A. § 7-4-109(c), which involves the qualifications of county election commissioners.[1] The statute was amended to provide as follows:
(c)(1) No person who is a paid employee of any political party or of any person running for any office on that county's ballot shall be eligible to be a member of a county board or an election official.
(2)(A) No person serving on the county board shall participate in any person's campaign listed on that county's ballot.
(B) The making of a financial contribution to a candidate shall not be considered participating in a candidate's campaign.
(3) No person employed with a company that has any business dealings, contracts, or pending contracts before a county board to which he or she would seek appointment shall be eligible to be a candidate for the county board.
You indicate that each of the above subsections is clear, except the italicized portion above in subsection (c)(2)(A), which makes it unlawful for a commissioner to "participate in any person's campaign listed on that county's ballot." Your four questions thus pose various scenarios and essentially inquire as to whether those actions would constitute "participat[ing] in any person's campaign." I will assume for purposes of your question that each of the candidates listed in the questions above will be listed on the ballot in the county in which the commissioner serves.
Question 1 — For example, may a commissioner put a sign in support of County Judge Candidate A in their yard?
Your first question concerns the placement of a yard sign in the commissioner's yard. The relevant inquiry is whether this amounts to a commissioner "participat[ing] in any person's campaign."
As an initial matter, I recently noted in Op. Att'y Gen. 2007-046 and 2007-037 "the Attorney General's lack of authority to supply a definition of a term or phrase that the legislature has not defined." See also, Ops. Att'y Gen. 2006-028; 2005-284; 2005-020; and 2000-338, at 2, quoting Op. Att'y Gen. 1998-025 ("[t]his office has consistently taken the position that in the absence of a legislatively-or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition.")
Where a term is not defined, however, the Arkansas Supreme Court applies the rules of statutory construction to determine its meaning. As stated in K.N. v. State, 360 Ark. 579, 584, 203 S.W.3d 103 (2005):
The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Raley v. Wagner,346 Ark. 234, 57 S.W.3d 683 (2001); Dunklin v. Ramsay, 328 Ark. 263,944 S.W.2d 76 (1997). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Stephens v. Arkansas Sch. for the Blind, 341 Ark. 939, 20 S.W.3d 397 (2000); Burcham v. City of Van Buren, 330 Ark. 451, 954 S.W.2d 266 (1997). Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Stephens v. Arkansas Sch. for the Blind, supra (citing State v. McLeod, 318 Ark. 781, 888 S.W.2d 639
(1994)). Finally, the ultimate rule of statutory construction is to give effect to the intent of the General Assembly. Ford v. Keith,338 Ark. 487, 996 S.W.2d 20 (1999); Kildow v. Baldwin Piano Organ,333 Ark. 335, 969 S.W.2d 190 (1998).
Id. at 584, 585, quoting Weiss v. American Honda Finance Corp.,360 Ark. 208, 200 S.W.3d 381 (2004).
The court has sometimes resorted to dictionary definitions in order to determine the meaning of a word or phrase, see Arkansas Tobacco Control Board v. Santa Fe Natural Tobacco Company, 360 Ark. 32, 39,199 S.W.3d 656 (2004), or to "legal" dictionary definitions, Harold Ives Trucking Company v. Pickens, 355 Ark. 407, 411, 139 S.W.3d 471 (2003). The court has stated, however, that it is not limited, in construing the meaning of a word or phrase to dictionary definitions. See, e.g., Bill Fitts Auto Sales, Inc. v. Daniels, 325 Ark. 51, 55, 922 S.W.2d 718 (1996). The court has sometimes looked to definitions adopted in other states, Harold Ives Trucking Company v. Pickens, supra; or to the history of a statute and the record of the court's interpretation of it. Lawhon Farm Services v. Brown, 335 Ark. 272, 279, 984 S.W.2d 1 (1998).
It has been held in this regard that the word "`[p]articipate' is derived from two Latin words, "pars," [meaning] part, and "capio," [meaning] to take. It means to take part — to share in common with others." Reardon v. State, 4 Tex. App. 602 (1878). See also, Territory v. Tacuban, 40 Haw. 208 (1953).
Despite this fairly clear definition of the word "participate," I have found no helpful case law indicating whether the placement of a campaign yard sign could be considered "participat[ing]" in a candidate's campaign. It is unclear, in my opinion, that such placement constitutes "taking part" in a campaign. Such a construction may be doubtful in light of the fact that the applicable statute (A.C.A. § 7-4-109
(c)(2)(B)), permits election commissioners to make financial contributions to a candidate's campaign. It is difficult to conclude that the General Assembly intended to allow that type of tangible expression of support of a candidate, but to deny a commissioner the right to place a candidate's sign in the commissioner's yard. Viewing the statute as a whole, therefore, and with the presumptive legislative intent in mind, I cannot state that the placement of a candidate's campaign sign in the commissioner's yard clearly amounts to "participat[ing] in any person's campaign." Although we do not have the benefit of any Arkansas case law on point and, as stated above, I cannot supply a controlling definition, in my opinion a court faced with the question would likely conclude that the answer to your first question is "yes."[2]
Question 2 — May a commissioner put a bumper sticker in support of U.S. Senate Candidate B on their vehicle?
In my opinion an analysis similar that to that discussed in response to your first question above is equally applicable to your second question concerning a bumper sticker. See again, however, n. 2, supra.
Question 3 — May a commissioner make phone calls encouraging voters to support Secretary of State Candidate C?
In my opinion this activity is clearly prohibited by A.C.A. §7-4-109(c)(2)(A) as constituting the "participat[ion] in any person's campaign." A similar issue was discussed in Gremillion v. Department of Highways, 129 So.2d 805 (La. 1961), in which a civil service employee's discharge was upheld for requesting employees under his supervision to vote for the candidate of his choice for governor. The court held that this action constituted "a taking part in a political campaign" which was prohibited by the Louisiana Constitution. Id. at 808. The court stated that "the meaning of `political campaign' contemplates . . . above all the solicitations of the voters by adherents of the candidate." Id.
In my opinion, similarly, the making of phone calls to encourage voters to support a political candidate clearly constitutes "participat[ing] in any person's campaign." The answer to your third question is therefore "no."
Question 4 — May a commissioner be a host for a fundraiser in support of State Assembly Candidate D?
In my opinion this action is also prohibited by A.C.A. §7-4-109(c)(2)(A). Although A.C.A. § 7-4-109(c)(2)(B) authorizes a commissioner to make a financial contribution to a candidate, there is no corresponding authorization for a commissioner to ask or encourage other persons to do so. In my opinion that is the nature of hosting a "fundraiser," and it constitutes taking part in, or participating in a candidate's campaign. In my opinion, therefore the answer to your fourth question is "no."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] County election commissioners consist of the county chairmen or the county majority and minority parties, along with a third member selected by the county committee of the majority party. A.C.A. § 7-4-102(a)(1) (Supp. 2007). If a county chairman is an elected official, or is "otherwise ineligible to serve," he may appoint a resident to serve in his stead. Id. at (a)(2).
[2] I must note, however, that applicable party rules may provide additional restrictions applicable to primary elections.