The Honorable Marilyn Edwards State Representative 2330 North Juneway Terrace Fayetteville, Arkansas 72703-2915
Dear Representative Edwards:
I am writing in response to your request for an opinion on several questions concerning the election of regional water district board members. Specifically, you state the following background information and pose the following seven questions:
 Act 863 of 2007 amended A.C.A. § 14-116-301 (as to a water district comprised of less than four counties) stating that any board member must reside in the service area of the customers of the district which is the area within the boundaries of the water district to which the customers of the district currently provide retail water services or other services that have purchased water from the district.
 The Beaver Water District was created in 1959 and is composed of Washington and Benton counties. Four cities, Fayetteville, Springdale, Bentonville, and Rogers purchase water directly from the district. All, or some, of these cities sell water to other smaller cities. Some other water authority entities in the counties also purchase water from the Benton-Washington Water Authority (commonly known as Two Ton) [a separate entity from the Beaver Water District] which in turn sells water to some smaller cities and/or other water entities. *Page 2 
 1) Does this act apply to water districts that were created and operating prior to said Act, specifically, Beaver Water District?
 2) What does "retail" mean in the context of said Act?
 3) Would "retail" include only the four major cities as set out above, or would it include other smaller cities that purchase water from these four cities?
 4) Would "retail" include smaller cities or other water entities that purchase water from Two Ton?
 5) What is meant by the term "other service" and how does this clause affect the answer to any of the above questions?
 6) Can this Act lawfully restrict the Board membership in such a manner? (Previously anyone residing in the district could hold a position on the board).
 7) What is meant by the term "service area" as far as eligibility to vote in an election for a Board seat is concerned? (Can all the voters in the entire district vote? From what source are the County Clerks and/or the County Election Commission to look to determine "service areas?" Can they require the Beaver Water District to provide this information to them?)
 Petitions to file for any vacant positions are due by September 5th for the November elections and it is imperative that the County Clerks and/or the County Election Commission be able to determine who may run for these positions.
RESPONSE
In my opinion the answer to your first question is "yes," the Act applies to districts that were created prior to passage of the Act. In response to your second question, I cannot provide a controlling definition of a term where the legislature has not done so. I have set out some discussion of the word "retail," however, for your information. In response to your third question, although I am not a finder of fact in the issuance of Attorney General opinions, in my opinion the service area described in A.C.A. § 14-116-301(b)(1) only includes the area of "retail" sales by the four major cities you describe, who appear from your description to be the only "customers" of the district itself. In response to your fourth question, *Page 3 
although I am not a finder of fact, in my opinion the area comprising the service areas of the municipalities and other water entities supplied by Two-Ton do not appear to be within the applicable definition. In response to your fifth question, the words "other services" could have a very important impact upon the answers to the questions above, depending upon how the words are construed. In my opinion, however, a court would construe these words as having reference only to other "retail" services. In response to your sixth question, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Arkansas or United States Constitution. Regional water distribution districts are creatures of the General Assembly and in my opinion the General Assembly may pass legislation to govern their proceedings, so long as no constitutional objection lies. Finally, in response to your multi-part seventh question, I can refer you to the language of A.C.A. § 14-116-301(b)(1) and (2) in this regard. As to the final part of this question, consultation with local counsel, the affected water district, and the Arkansas Secretary of State's office is advisable.
Question 1 — Does this act apply to water districts that were createdand operating prior to said Act, specifically, Beaver WaterDistrict?
In my opinion the answer to this question is "yes." Nothing in the Act indicates that its applicability is restricted to regional water districts created after the Act's effective date.
Some background on the applicable law and 2007 amendment will be helpful prior to addressing your first question. As you note,Act 863 of 2007, in pertinent part, amended several sections in the 1957 "Regional Water Distribution District Act" (A.C.A. §§ 14-116-101
through-801 (Repl. 1998 and Supp. 2007)). As noted in Hink v. Board ofDirectors of Beaver Water District, 235 Ark. 107,357 S.W.2d 271 (1962), the original act comprising the subchapter was passed in order to take advantage of a federal policy permitting at least some water impounded in federally owned lakes and reservoirs to be reserved for municipal and industrial use. As stated in Hink:
 In order to take advantage of this federal policy our legislature adopted Act 114 of 1957, which appears as [A.C.A. §§ 14-116-101 through-801]. This statute provides for the creation of regional water distribution districts as nonprofit public *Page 4 
corporations. Such a district is authorized to contract with the Corps of Engineers for the acquisition of water rights in federal impoundments and to make contracts with consumers, including municipalities, for the sale of such water. . . .
 Pursuant to the above statute the Beaver Water District was organized by an order of the Benton circuit court on July 17, 1959.
Id. at 108-09. See also, Acts 1957 No. 114 (preamble), stating that ". . . no federal funds can be expended to provide water storage capacity for industrial, municipal, and agricultural water supply purposes in said reservoirs until some authorized local agency shall execute to the United States a contract of assurance that such local interest will, (a) make use of said water supply and (b) pay such additional costs of said reservoir as may be allocated to water supply. . .").
The relevant part of the 1957 Act for purposes of your first question is now codified at § 14-116-301 (Supp. 2007). It sets out the composition of the board of directors of a regional water distribution district. After the amendments made by Act 863 of 2007, it provides in pertinent part as follows:
 14-116-301. Members generally — Original appointments.
 (a) If a water district is composed of all or a portion of four (4) or more counties:
 (1) The board of directors shall be composed of three (3) qualified electors who are residents of the district from each of the counties in which lands are embraced in the district. Furthermore, if the circuit court creating a water distribution district finds that a larger number of board members than that provided for above is necessary to afford adequate representation for the various parts of the district, the court may establish a board consisting of a greater number of members than that provided for above. In this case the representation on the board of directors shall be apportioned to the various parts of the district in a manner the circuit court deems just and equitable. *Page 5 
 (2) When the circuit court has established the district, it shall within a reasonable time thereafter appoint the three (3) or more directors of the water district. Upon the expiration of the terms of the directors so appointed, subsequent directors shall be elected as set out in this subchapter by the qualified electors residing in the water district in each county in which there is area included in the district.
 (b) If a water district is composed of all or a portion of less than four (4) counties:
 (1) The board of directors shall be composed of three (3) qualified voters residing in the service area of the customers of the district, which is the area within the boundaries of the water district to which the customers of the district currently provide retail water or other services that they have purchased from the district. However, if the district embraces lands in more than one (1) county but less than four (4) counties, then the board of directors shall be composed of three (3) qualified electors who are residents of the service area of the customers of the district from each of the counties in which lands are embraced in the district. Furthermore, if the court creating a water distribution district finds that a larger number of board members than that provided for above is necessary to afford adequate representation for the various parts of the district, the court may establish a board consisting of a greater number of members than that provided for above. In this case the representation on the board of directors shall be apportioned to the various parts of the district in a manner the court deems just and equitable, and each director shall be a qualified voter residing in the part of the service area of the customers of the district that he or she represents.
 (2) When the circuit court has established the district, it shall appoint, within a reasonable time thereafter, the three (3) or more directors of the water district. Upon the expiration of the terms of the directors so appointed, subsequent directors shall be elected as set out in this subchapter by the qualified electors residing in the service area of the customers of the water district in each *Page 6 county in which lands are embraced in the district or, if the district has been apportioned by the court, by qualified voters residing in the part of the service area of the customers of the district that the director will represent.
Emphasis added.
The 2007 amendment by Act 863, among other things, added subsection (b) above, relating to districts comprised of less than four counties. It requires board members to reside in the "service area" of the "customers" of the district. If the district is comprised of two or three counties, subsection (b) also apparently requires three board members from each county (with residence in the service areas), to be on the board. Under former law, the board composition of all districts, regardless of the number of counties covered, was governed by what is now subsection (a)(1), which simply required the three board members to be residents of the district — with each county represented if the district covered land in more than one county.[1] Because the Beaver Water District is comprised of only two counties, Washington and Benton, subsection (b), as amended in 2007, is thus the pertinent subsection and the majority of your questions inquire about the new language used in that subsection.
Your first question, however, is whether Act 863 of 2007 applies at all to water districts that were created and operating prior to the passage of the Act, including the Beaver Water District, which was apparently created in 1959. See Hink, supra. In my opinion the answer to this question is "yes."
In analyzing this question, the rules of statutory construction must be applied. It has been stated that "[t]he basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the General Assembly." Pugh v. St. PaulFire Marine Ins. Co., 317 Ark. 304, 877 S.W.2d 577 (1994). In this regard, the first rule is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common *Page 7 
language. Weiss v. McFadden, 353 Ark. 868, 120 S.W.3d 545 (2003). The court will construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect will be given to every word in the statute if possible. Ozark Gas Pipeline Corp. v.Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language is plain and unambiguous, legislative intent must be determined from the plain meaning of the language used, without resorting to a search for the legislative intent. When the meaning is not clear, the court will look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. MacSteel Div. of Quanex v. Arkansas Okla. GasCorp., 363 Ark. 22, 210 S.W.3d 878 (2005). It is also well established that unless a different legislative intent is indicated, a court will not resort to a strained construction for the purpose of restricting or expanding the meaning of a statute. Thompson v. Younts, 282 Ark. 524,669 S.W.2d 471 (1984). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894
(1998).
In this regard, the plain language of the Act 863 of 2007 makes no reference to when a particular regional water distribution district is, or was created. The statute governing the composition of regional water district boards (A.C.A. § 14-116-301), differentiates as to the election of board members based only upon the number of counties the district covers, not upon when the district was created. When the legislature has intended to apply a new law only to districts created after a certain date, or to preserve prior law as to previously-created districts, it has usually stated as much in express terms. See, e.g., A.C.A. § 14-116-102(7) (Supp. 2007) (empowering regional water distribution districts in existence on January 1, 2001 (other than districts with lands subject to assessment under A.C.A. § 14-116-601 et seq.), to own and operate property for the purpose of collecting, treating and disposing of sewage); A.C.A. § 14-14-705(2)(E) (stating that county administrative boards shall contain five members, but that a county library board created after August 1, 1997 shall consist of not less than five members nor more than seven members); A.C.A. 14-88-301
(stating that the terms of improvement district commissioners in districts created after July 1, 1999 shall be six years); A.C.A. § 14-90-102 (stating that all municipal improvement districts created after June 9, 1949, shall be governed by certain provisions and that all municipal improvement districts existing on June 9, 1949 shall continue to function under laws existing prior to June 9, 1949, with limited exceptions); and A.C.A. § 14-217-104 (stating that the composition and method of selection of the boards of *Page 8 
consolidated utility districts created before March 19, 1975 shall continue in full force and effect, with certain amendments). Act 863 contains no such language. In my opinion, the language on its face applies to districts created both before and after the passage ofAct 863 of 2007.
Section 14-116-301 (the first statute amended by Act 863), however, is captioned "Members generally — original appointments." (Emphasis added). This fact might lead to the conclusion that Act 863 is addressed only to the original creation of regional water districts and the initial appointment of board members, perhaps suggesting that the Act's provisions apply only when a district is newly created. I must note, however, that the descriptive headings or "catchlines" immediately preceding individual sections of the Code "do not constitute part of the law and shall in no manner limit or expand the construction of any section." A.C.A. § 1-2-115 (Repl. 1996). In addition, the text of A.C.A. § 14-116-301 is not limited to the original composition of boards of directors. Both subsections (a)(2) and (b)(2) of A.C.A. § 14-116-301
address the subsequent election of board members. See, e.g., A.C.A. § 14-116-301(b)(2) (Supp. 2007) ("Upon the expiration of the terms of the directors so appointed, subsequent directors shall be elected as setout in this subchapter by the qualified electors residing in the servicearea of the customers of the water district in each county in which lands are embraced in the district.") (Emphasis added.)
In this regard, Act 863 amends another statute in the subchapter, A.C.A. § 14-116-303, to require, where the district is comprised of less than four counties, that nominations for subsequent directors be upon petitions signed by at least fifty qualified electors residing in the part of the "service area of the customers of the district from which the director is to be elected." A.C.A. § 14-16-303(a)(2). Again, no distinction is made based upon when the district was created. No previous provisions are retained to provide an alternate procedure for districts with less than four counties created before the Act's effective date. The plain language of this provision thus applies to the subsequent election of directors in districts created either before or after the passage of Act 863 of 2007.
In addition, in my opinion, application of Act 863 to districts created before its passage does not transgress the presumption against retroactive application of legislative acts. As I stated in Op. Att'y Gen. 2007-171: *Page 9 
 A well-established principle of statutory interpretation that has been consistently applied by the Arkansas Supreme Court is the principle that all legislation is presumed to apply prospectively unless the legislature expressly declares, or necessarily implies by the language used, an intent to give the legislation retroactive effect. See, e.g., City of Cave Springs v. City of Rogers, 343 Ark. 652, 37 S.W.3d 607 (2001); City of Dover v. Barton, 337 Ark. 186, 987 S.W.2d 705 (1999).
Id. at 10.
As my predecessor stated in Op. Att'y Gen. 2004-001 "Legislation will not be construed as being retroactive if it may reasonably be construed otherwise, and any doubt is resolved against retroactive application."Id., citing Arkansas Rural Medical Student Loan Scholarship Bd. v.Luter, 292 Ark. 259, 729 S.W.2d 402 (1987).
It has also been stated, however, that ". . . a statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date." Sutherland Stat. Const. § 41.01 at 338 (5th ed.) In addition, one of my predecessors has stated that "The Arkansas courts have allowed statutes to operate retroactively, even when they have had the effect of increasing a burden upon the affected party, if the operative event occurred after the effective date of the act." Op. Att'y Gen. 95-218
at 2, citing Forrest City Mach. Works v. Aderhold, 273 Ark. 33,616 S.W.2d 720 (1981) and Popeye's Famous FriedChicken v. Willis, 7 Ark. App. 167,646 S.W.2d 17 (1983).
In this instance, the plain language of Act 863 applies to regional water districts created prior to its passage. The Act does not have retroactive effect because it changes the way board members are electedin the future. The operative event (a future election), occurs after the passage of the Act. Cf. also, Town of Lisbon v. Lisbon VillageDistrict, 104 N.H. 255, 183 A.2d 250 (1962) (concluding that legislation modifying "village districts" was not retroactive in light of the legislature's plenary control over such districts and the fact that the legislative power was reserved by necessary implication when the districts were created). *Page 10 
In my opinion, therefore, the answer to your first question is "yes," Act 863 applies to districts created and operating prior to the passage of the Act, including the Beaver Water District.
Question 2 — What does "retail" mean in the context of said Act?
This question has reference to the language of A.C.A. § 14-116-301(b)(1), which states that:
 The board of directors shall be composed of three (3) qualified voters residing in the service area of the customers of the district, which is the area within the boundaries of the water district to which the customers of the district currently provide retail water or other services that they have purchased from the district. However, if the district embraces lands in more than one (1) county but less than four (4) counties, then the board of directors shall be composed of three (3) qualified electors who are residents of the service area of the customers of the district from each of the counties in which lands are embraced in the district.
(Emphasis added).
The operative words and phrases in the subsection above are the "service area" of the customers of the district, defined as the "area within the boundaries of the water district to which the customers of the district currently provide retail water or other services that they have purchased from the district." (Emphasis added). Board members of districts covering less than four counties must be elected from these "service areas." The "customers" of the district apparently refers to the municipalities or other entities purchasing water from the regional district. See Hink, supra (referring to a district's ability to make contracts with consumers, including municipalities, for the sale of such water). The applicable area is therefore the "service area" of these municipalities or other customers, which is the area in which the customers provide "retail" water or other services. The word "retail" is not defined in the Act.
As I recently stated in Op. Att'y Gen. 2007-204, I cannot provide a controlling definition of a term where the legislature has not done so.Id. citing Op. Att'y Gen. 2007-037 (quoting Op. Att'y Gen. 2005-284 ("I and my predecessors have *Page 11 
previously noted the Attorney General's lack of authority to supply a definition of a term that the legislature has not defined.")) Seealso, Ops. Att'y Gen. 2006-028; 2005-284; 2005-020; and 2000-338, at 2,quoting Op. Att'y Gen. 1998-025 ("[t]his office has consistently taken the position that in the absence of a legislatively-or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition.")
As I stated in Op. Att'y Gen. 2007-046, however:
 The court has sometimes resorted to dictionary definitions in order to determine the meaning of a word or phrase, see Arkansas Tobacco Control Board v. Santa Fe Natural Tobacco Company, 360 Ark. 32, 39, 199 S.W.3d 656 (2004), or to "legal" dictionary definitions, Harold Ives Trucking Company v. Pickens, 355 Ark. 407, 411
139 S.W.3d 471(2003). The court has stated, however, that it is not limited, in construing the meaning of a word or phrase to dictionary definitions. See, e.g., Bill Fitts Auto Sales, Inc. v. Daniels, 325 Ark. 51, 55, 922 S.W.2d 718 (1996). The court has sometimes looked to definitions adopted in other states, Harold Ives Trucking Company v. Pickens, supra; or to the history of a statute and the record of the court's interpretation of it. Lawhon Farm Services v. Brown, 335 Ark. 272, 279, 984 S.W.2d 1(1998).
Id. at 6.
In this regard, the commonly accepted definition of "retail" is "the sale of goods to ultimate consumers, usually in small quantities (opposed to wholesale)." Random House Webster's UnabridgedDictionary (2nd ed. 2001), at 1642. See also Black's Law Dictionary (8th ed. 2004), at 1341 (defining "retail" as "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing"); Wiseman v. ArkansasWholesale Grocers' Association, 192 Ark. 313, 90 S.W.2d 987 (1936) ("Retail sales have been defined as sales to consumers, rather than to dealers, or merchants for resale"); MacCarroll, Commissioner of Revenuesv. Ozark Rural Electric, 201 Ark. 329, 146 S.W.2d 693 (1940) (sale by retail of electricity to a consumer generally for his use was subject to tax applying to "[a]ll retail sales of electric power and light . . ."); and White Motor Company v. *Page 12 Littleton, 124 F.2d 92 (5th Cir. 1941) (Given its common and ordinary acceptation when used in sales parlance, the term "retail" means a sale in small quantity or direct to the consumer, as distinguished from the word wholesale, meaning a sale in large quantity to one who intends to resell).
Although I cannot provide a controlling definition of a term undefined by the General Assembly, the foregoing should be of assistance in understanding the meaning of the word "retail."
Question 3 — Would "retail" include only the four major cities as setout above, or would it include other smaller cities that purchase waterfrom these four cities?
In my opinion the service area described in A.C.A. § 14-116-301(b)(1) only includes the area of "retail" sales by the four major cities you describe, who appear from your description to be the only "customers" of the district itself.
The answer to this question may depend on the proper construction of the word "customers" and other language in the subsection, in addition to the word "retail." Again, board members in regional water districts comprised of less than four counties are elected from the "service areas" of the "customers" of the district. That service area is defined as the area in which the "customers" provide retail water or other services that they have purchased from the district. A.C.A. § 14-116-301(b)(1) (Supp. 2007).
It appears that this language includes only the area in which the cities purchasing water from the district provide "retail" water or "other services." I am not a finder of fact in the issuance of Attorney General opinions. Based upon the information that you have provided, however, the four major cities you describe clearly appear to be "customers" of the district. A "customer" is generally defined as "a person who purchases goods or services from another; buyer; patron." Random House Webster's New Collegiate Dictionary, supra at 494. The other smaller cities that purchase water from the four major cities do not appear to be "customers" of the Beaver Water District. Under the facts you describe, they instead purchase their water from one of the four major cities. In addition, the service area described in A.C.A. § 14-116-301(b)(1) includes only the area in which the customers provide "retail" water or other services. Although you have not provided any elaborate facts in this regard, if the four major cities sell water to smaller cities, who in turn *Page 13 
resell the water to their ultimate consumers, the sale from a major city to a smaller city would not appear to be a "retail" sale. It would be a sale for resale or a "wholesale" transaction. See response to Question 2, supra. Finally, the applicable subsection defines "service area" as the area in which the customers of the district provide retail waterthat they have purchased from the district. This would not appear to include the area in which smaller cities provide retail water that they have purchased from the customers of the district rather than from the district itself. In my opinion, therefore, the service area described in A.C.A. § 14-116-301(b)(1) only includes the area of "retail" sales by the four major cities you describe, who appear from your description to be the only "customers" of the district itself.
Question 4 — Would "retail" include smaller cities or other waterentities that purchase water from Two Ton?
Again, I am not a fact-finder in the issuance of Attorney General opinions. The resolutions of your questions may require resort to the particular facts. It is my understanding, however, that "Two-Ton" (the Benton-Washington Regional Public Water Authority), purchases water from the Beaver Water District, but does not itself provide any retail water services.[2] See www.bwrpwa.com ("Our Customers") (noting that "Two Ton's" customers are "all municipal type utilities that sell water to residential, commercial and industrial customers" and that the Authority "does not sell water to residential customers"). As a consequence, for purposes of applying the definition of "service area" referred to in A.C.A. § 14-116-301(b)(1), although "Two Ton" is a "customer" of the Beaver Water District, it does not appear to have a "service area" in which it provides "retail water or other services." In my opinion the service areas of the municipalities and other water entities supplied by Two-Ton are thus not within the meaning of the term "service area." Clearly, the municipal and other customers of Two Ton provide retail water or other services in their service areas. These smaller cities and entities supplied by Two-Ton, however, do not appear to be "customers" of the Beaver Water District or to be providing retail water "that they have purchased from the district." I thus cannot conclude that their service areas are included *Page 14 
within the A.C.A. 14-116-301(b)(1) definition. Again, however, I am not a finder of fact in this regard. Consultation with local counsel is advisable.
Question 5 — What is meant by the term "other service" and how doesthis clause affect the answer to any of the above questions?
This issue is unclear under the language of the Act. The words "other services" could have a very important impact upon the answers to the questions above, depending upon how the words are construed. I have answered the questions above with the assumption that the definition of "service area" is restricted to the area of "retail" provision of water or "other services." In that regard, my answers above are based upon the assumption that the word "retail" modifies both the words "water" and "other services" — i.e., that any services provided must be "retail" for purposes of defining the applicable service area. If this assumption is incorrect, and the words "other services" are not restricted to retail services, then the applicable service area under the statute might include areas where the District's customers provide "wholesale" services, thus possibly including the smaller cities supplied by the four major cities and the cities supplied by Two-Ton. In my opinion, however, the word "retail" modifies both the word "water" and the words "other services."
In determining what meaning to ascribe the term "other services" as used in A.C.A. § 14-116-301(b)(1), a court would likely employ statutory construction aids to ascertain the legislative intent. One of these aids is the "old and settled" doctrine of "ejusdem generis" (see CherokeePublic Service Co. v. City of West Helena, 184 Ark. 38,44,41 S.W.2d 773 (1931)). Under the doctrine of ejusdem generis, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A Singer, Sutherland Statutory Construction § 47.17 (7th ed. 2007). See also,Agape Church v. Pulaski County, 307 Ark. 430, 821 S.W.2d 21 (1991); andWoodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431 (1989). "The rule `accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the generic words as extending the provisions of the statute to everything embraced in that class. . . .'" Id., citing National Bankof Commerce v. Estate of Ripley, 161 Mo. 126, 61 S.W. 587 (1901). Thus the words "other services" in A.C.A. § 14-116-301(b)(1) would be construed, under this *Page 15 
doctrine, as including services similar in nature to, or of the same class as "retail water."
Another construction aid is the principle of interpretation known as "noscitur a sociis." This doctrine translates literally to "it is known from its associates." Practically applied, it means that a word can be defined by the accompanying words. See generally McKinney v.Robbins, 319 Ark. 596, 892 S.W.2d 502 (1995) and Weldon v. SouthwesternBell Telephone Co., 271 Ark. 145, 607 S.W.2d 395 (1980). It can have the effect of limiting the scope of general language to the specific language of its context. Id.
Although I cannot state conclusively what exact "other services" were contemplated by the General Assembly in adopting Act 863 of 2007, it appears from the principles of statutory construction set out above that a court would construe the term as having reference only to "retail" services provided by customers of the District.[3] The answers to your Questions 3 and 4 are thus based upon this assumption.
Question 6 — Can this Act lawfully restrict the Board membership insuch a manner? (Previously anyone residing in the district could hold aposition on the board).
It is axiomatic that the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Arkansas or United States Constitution. See, e.g.,Erxleben v. Horton Printing Co., 283 Ark. 272, 675 S.W.2d 638 (1984);Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v.Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); and Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964). It is only when legislation expressly, or by necessary implication, violates a provision of one of those documents that the legislation will be struck down as unconstitutional.North Little Rock Transp. Co. v. City of North Little Rock,207 Ark. 976, 184 S.W.2d 52 (1945) and Bush v. Martineau, 174 Ark. 214,295 S.W. 9 (1927).
I am unaware of any facial constitutional challenges that might be brought against Act 863 of 2007 in this regard. Regional water distribution districts are creatures of the General Assembly and in my opinion the General Assembly may pass *Page 16 
legislation to govern their proceedings, so long as no constitutional objection lies. See, e.g., Water Improvement District #1 of Benton v.Briner, 185 Ark. 742, 48 S.W.2d 1104 (1932) ("Boards of improvement are creatures of the city or town councils by virtue of legislative authority, and the Legislature has the right to prescribe the manner in which they shall perform their duties").
With regard to any "as applied" constitutional challenges, I cannot analyze that question in the absence of all relevant facts. Although your sixth question inquires about the restriction as to "Board membership" (presumably referring to the required residence of board members), the amendments made by Act 863 of 2007, as noted above and discussed infra, also change the area within which electors are eligible to vote for board members. Whether these changes would transgress any constitutional principle, including the Fourteenth Amendment Equal Protection Clause's "one person, one vote guarantee," would have to be determined in light of the applicable facts. Cf. however, Ball v.James, 451 U.S. 355 (1981) (concluding that an Arizona "Agricultural Improvement and Power District's purpose of delivering untreated water for agricultural use and supplying electric power to hundreds of thousands of Arizona residents was sufficiently specialized and narrow to exclude it from operation of the "one man, one vote" principle).See also Salyer Land Company v. Tulare Lake Basin Water StorageDistrict, 410 U.S. 719 (1973).
Question 7 — What is meant by the term "service area" as far aseligibility to vote in an election for a Board seat is concerned? (Canall the voters in the entire district vote? From what source are theCounty Clerks and/or the County Election Commission to look to determine"service areas?" Can they require the Beaver Water District to providethis information to them?)
In response to the first part of this question, the term "service area" is explained in the Act as meaning ". . . the area within the boundaries of the water district to which the customers of the district currently provide retail water or other services that they have purchased from the district." A.C.A. § 14-116-301(b)(1). With regard to your parenthetical question above concerning whether all voters in the district can vote, I can point out the language of A.C.A. § 14-116-301(b)(2), which states that "subsequent directors shall be elected as set out in this subchapter by the qualified electors residingin the service area of the customers of the water district in eachcounty in which lands are embraced in the district. . . ." (Emphasis added.) As to the last part of your question concerning from what *Page 17 
source the county clerks and election commissions are to determine the "service areas," the Act does not address this issue. Consultation with local counsel, the affected water district and the Arkansas Secretary of State's office is advisable. See A.C.A. § 7-1-106 (requiring the Secretary of State to designate at least one member of his staff to become knowledgeable of the election laws as they pertain to elections in the State of Arkansas for the purpose of answering procedural questions concerning elections).
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
 DUSTIN McDANIEL, Attorney General
[1] Although the language of (a)(1) is not entirely clear as to the number of board members, it is my understanding that this subsection has historically been interpreted, at least in the Beaver Water District, as requiring three board members for each county in the district. Seee.g., www.bwdh2o.org (website of the Beaver Water District) "About the District" "Organization" (noting that the Beaver Water District is "governed by a six-member elected board of directors, with three members from Washington County and three from Benton County").
[2] According to the Secretary of State's website (www.sos.arkansas.gov/corps), the Benton Washington Regional Public Water Authority is organized as a nonprofit corporation under the Arkansas Nonprofit Corporation Act of 1993 (A.C.A. §§ 4-33-101
through-1701). I do not have any information as to whether it has converted to a public water authority under A.C.A. §§ 4-35-101
through-111 (Supp. 2007).
[3] It is possible that the words "other services" refers to the retail provision of sewage collection services. See A.C.A. § 14-116-102(7) (Supp. 2007). *Page 1