Submitted on appellant's brief Dec. 3, decided Dec. 24, 1912.

**BATCHELDER *v.* CITY OF HOOD RIVER.**

(128 Pac. 439.)

**Waters and Water Courses — Public Water Supply — Rates— Bonds—Ordinance Surrending Governmental Powers.**

An issue of bonds for the construction of waterworks was authorized, and thereafter the council adopted an ordinance attempting to fix the water rates, taking from the people the right to sell or lease the water plant, or to grant any water franchise during the life of the bonds.  Held, that while a city con-

tracting in its proprietary capacity may make contracts authorized by charter and necessary in carrying out its purposes, even though the terms of such contracts extend beyond the term of the officer acting, that as the ordinance attempted to limit governmental or legislative powers its terms were ultra vires and void.

From Hood River: WILLIAM L. BRADSHAW, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit for an injunction by J. F. Batchelder against E. H. Hartwig, as Mayor, H. B. Lancille, as Recorder and E. O. Blanchar as Treasurer of the city of Hood River. The facts are as follows:

The city of Hood River in the year 1909 desired to provide a system of waterworks for the city under and by authority of its charter, granted February 28, 1901 (Sections 97-107), Section 102 of which was amended February 22, 1905, and that section and Section 106 were again amended at a referendum election on March 25, 1909. Under the provisions of Section 102 of the charter, at an election held for that purpose, the city authorized the issue of its bonds in a sum not exceeding $90,000, with which to provide the city with a system of waterworks. The sufficiency and regularity of that election is not questioned. Thereafter the council adopted Ordinance No. 339, providing for the terms of the issue and sale of said bonds for the purpose of providing said water plant and was about to issue and sell the same, when plaintiff commenced this suit to enjoin the sale thereof, on the ground that the council is without authority to issue or sell the same upon the conditions and terms agreed upon with the purchaser. No evidence was offered at the trial except the correspondence between the prospective purchaser and the council, the record of the council's proceedings in relation thereto, the advertisement of the bonds for sale, and the copy of Ordinance No. 339, providing for the form of the bonds and terms and conditions thereof. In response to the

advertisement for bids for the bonds, Ulen & Co., of New York, among others, bid for the purchase of the bonds upon the condition that after examination thereof they should be passed upon favorably and approved by their attorneys, and their bid was accepted by the city. After a great deal of correspondence, and upon the unfavorable opinion of their attorneys, Ulen & Co. waived their rights under their bid in favor of Morris Bros., of Portland, Oregon, who were jointly interested with them in the bid. The city attempted to consummate the sale of the bonds with Morris Bros., upon the bid of Ulen & Co. by complying with the conditions required by the purchasers. The circuit court rendered a decree dismissing the suit, and plaintiff appeals.

REVERSED: DECREE RENDERED.

For appellant there was a brief over the name of *Mr. George R. Wilbur.*

No appearance for respondent.

Opinion by MR. CHIEF JUSTICE EAKIN.

Upon this appeal there is no appearance by the defendants. The objections of the plaintiff to the action of the defendants in attempting to issue and sell the bonds may be summed up in the statement that Ordinance No. 339, providing the terms, conditions, and form of the bonds, and also the attempt of the council to issue and dispose of them thereunder, is without authority and void, for the reason that it is an attempt by the council to contract away its municipal legislative power. The particular part of the ordinance to which objection is directed is contained in Sections 2 and 3, which provide as follows:

"Sec. 2. Until the said bonds and the interest thereon shall have been paid in full, the said city of Hood River shall and will each year levy and collect such tax on all taxable property within said city for the payment of the principal of said bonds and the interest

thereon as may be now or hereafter authorized by law to be levied and collected, including a tax not to exceed six-tenths of one per centum per annum as a special tax for the purpose of paying interest on said bonds as provided in Section 106 of the charter of said city, and shall and will each year at the time and in the manner prescribed by law, fix and establish water rates sufficient to pay the expense of maintaining and conducting said waterworks during the ensuing year and to pay one year's interest on said bonds, and, after three years time from the issuance of said bonds, to place four per centum of the amount of said bonds in a sinking fund; all moneys applicable to the payment of the principal of said bonds and the interest thereon shall be placed in a special fund and be kept separate and apart from all other funds of said city, and shall be applied exclusively to the payment of the principal of said bonds and the interest thereon as and when the same become due and payable and to no other purpose whatever; and the said city hereby irrevocably binds itself to collect sufficient water rates for said purposes and not to reduce its rates or charges for water so that the revenues derived from the said waterworks shall amount to a sum less than is necessary to pay said interest and provide said sinking fund for the payment of said bonds at maturity. The said city of Hood River further irrevocably binds itself not to sell, lease or in any manner dispose of its said waterworks system, including any additions or extensions thereof, until the principal of said bonds with the interest thereon shall have been paid in full, or in case said city should sell or dispose of the same before such payment, said city agrees to pay out of any moneys derived from the sale or other disposition thereof, all principal of said bonds and interest thereon that shall then remain unpaid; and that in any event it will not sell said waterworks system or any part thereof for a sum less than enough to pay the principal of all of said bonds then outstanding, with the interest thereon.

"Sec. 3.   The said city of Hood River further covenants and agrees with the purchasers of said bonds and coupons and with each and every person who may become the owner or holder of any of said bonds or coupons, that while any of said bonds or the interest thereon remains outstanding or unpaid, it will not grant to any

corporation or individual a franchise to supply the said city of Hood River and its inhabitants with water or allow any corporation or individual to lay down water mains and pipes in the streets of said city or permit any such corporation or individual to supply said city or its inhabitants with water."

The people upon a referendum election ordered by the council on March 25, 1909, amended Section 106 of the charter to read as follows:

"The council shall by January 1st of each year make a written statement of the probable expense of maintaining and conducting the waterworks and electric light plant during the ensuing year, and all improvements and extensions thereof, and from said statement, as nearly as possible, fix and establish water and light rate to cover such expenses and one year's interest on the bonds issued by the city of Hood River for constructing and improving said water and light plant, and after three years' time from issuance of said bonds to place four per cent of the amount of said bonds issued in a sinking fund; provided, however, that any necessary extensions exceeding the sum of $2,000 may be met by the sale of bonds to cover the same, when carried by a majority vote of the legal voters of the city of Hood River, who are also freeholders, at an election called for that purpose. All moneys received from the sale of bonds for a water or light system and from water and light users, shall be deposited with the treasurer of the city of Hood River, Oregon, and be kept in a separate fund, to be known as the light and water fund, from which fund shall be paid the interest on bonds issued for light and water systems, and warrants ordered drawn by the council to be placed in the sinking fund as required by bonds issued for light and water systems, and warrants drawn to cover maintenance and operating expenses of light and water systems. The council may at the same time the tax for general purposes is levied, levy and collect a tax not to exceed six-tenths of one per centum per annum as a special tax for the purpose of paying interest on the bonds issued for light and water systems. Said tax may be included in the other taxes of said city and considered a part thereof for the purpose of levying and collecting

the same; and as the taxes are collected, in proportion to the other taxes collected, with or included in the sum collected, shall be set apart from the other taxes and be placed in the light and water fund."

It is true that, when acting or contracting in its proprietary capacity, the city may make contracts authorized by the power conferred by the charter, necessary and usual in carrying out the purposes for which it was created, even though the terms of such contract extend beyond the term of the officer acting. Dillon, Municipal Corporations, § 1303. But such powers as are governmental or legislative cannot be surrendered or bartered away; and therefore the council cannot make contracts which tend to limit or deny to it or the people the right to exercise its or their legislative powers. Dillon, Municipal Corporations, §§ 245, 791. And contracts having that effect, unless specially authorized, are void. Most of the terms of Sections 2 and 3 of Ordinance No. 339 are contained in the amended charter (Section 106) ; but the charter is subject to amendment by the people, and the council cannot take that power away from them. Here is an attempt to take, not only from the council, but from the people, the power to fix water rates during the life of the bonds, and the right to direct the application of the money accruing therefrom. It also attempts to take from the people the right to sell or lease the water plant during the life of the bonds. The ordinance contains an alternative clause that, in case it does sell or dispose of the plant, it agrees to pay for the bonds from the proceeds, and limits the price at which it may be sold. However, the bondholders cannot be required to accept payment until the maturity of the bonds. Therefore, that alternative clause is meaningless. It also contains the covenant that during the life of the bonds the city will not grant a franchise to any corporation to supply the city, or its inhabitants, with water; thus attempting to fix the future policy of the city as to

water supply. These things are all within the legislative power of the municipality, which must remain inviolate, and cannot be controlled or contracted away by the council. It is not only an attempt to mortgage the water plant and its income, but to fix a limit to the water rates to be charged, and to fix irrevocably a certain tax rate as additional security for the payment of the bonds. It is true these things are provided for by Section 106 of the charter, except the prohibition against the sale or lease of the plant, and against the granting of other franchises for water supply, but the attempt is to take from the people the power to amend Section 106 of the charter in these particulars, or to provide other legislation upon the subject, and to take from the council the power to regulate water rates and the power to apply the moneys received therefrom as it may in the future determine proper.

The contract provided by Ordinance No. 339 is *ultra vires* and void, and the decree of the circuit court is reversed, and one will be entered here enjoining defendants from issuing, selling, or in any way disposing of the bonds referred to under the terms of the contract provided for in Ordinance No. 339, or containing any of the stipulations herein held to be *ultra vires.*

REVERSED: DECREE RENDERED.