HINK *v.* BOARD OF DIRECTORS OF
BEAVER WATER DISTRICT.

5-2794                          357 S. W. 2d 271

Opinion delivered May 21, 1962.

*Jeff R. Rice* and *Walter R. Niblock,* for appellant.

*Little & Enfield, Leflar & Croxton,* and *Mehaffy, Smith & Williams,* by *Herschel H. Friday, Jr.,* and *James E. Westbrook,* for appellee.

GEORGE ROSE SMITH, J.  By this proceeding, which is apparently a test suit, the appellants as citizens and taxpayers seek to obtain a declaratory judgment and an injunction preventing the appellees from carrying out a proposed arrangement by which four cities in northwest Arkansas are undertaking to obtain a supplementary water supply.  The chancellor found the proposal to be valid in all respects, sustained a demurrer to the complaint, and dismissed the suit.

For some years it has been the policy of the federal government to permit some part of the water impounded in federally owned lakes and reservoirs to be reserved for municipal and industrial use.  The most recent statute, 43 U. S. C. A. § 390b, permits the Corps of Engineers to include a provision for such municipal or industrial use in its plans for a new reservoir if state or local interests agree to pay all additional construction costs that result from the inclusion of this provision in the plans.

In order to take advantage of this federal policy our legislature adopted Act 114 of 1957, which appears as Ark. Stats. 1947, §§ 21-1401 et seq.  This statute provides for the creation of regional water distribution districts as nonprofit public corporations.  Such a district is authorized to contract with the Corps of Engineers for the acquisition of water rights in federal impoundments

and to make contracts with consumers, including munici-
palities, for the sale of such water. In order to finance
its operations the district is authorized to borrow money
and to issue bonds to be secured by a pledge of its assets
and revenues.

Pursuant to the above statute the Beaver Water Dis-
trict was organized by an order of the Benton circuit
court on July 17, 1959. The district proposes to enter
into a contract with the Corps of Engineers for the
acquisition of water rights in the reservoir that is to be
impounded by the construction of Beaver Dam. The dis-
trict also proposes to enter into contracts for the sale of
water to the cities of Bentonville, Fayetteville, Rogers
and Springdale. To obtain money for its operations the
district will issue bonds to be secured by a pledge of its
assets and revenues.

In attacking this proposal the appellants rely upon
seven grounds for questioning its validity.

I. It is first contended that the four cities do not
have the authority to enter into an agreement such as the
one now proposed. The principal case relied upon is
*Yancey* v. *City of Searcy*, 213 Ark. 673, 212 S. W. 2d 546,
where we held that the city of Searcy could not purchase
an extensive intercity water distribution system and go
into the public utility business by undertaking to serve
three other municipalities.

That decision is not controlling in the case at bar.
Here the four municipalities do not propose to sell water
to one another or to enter into the business of acting as
public utilities. All that each city seeks is a dependable
source of water for its own municipal waterworks. In
*McGehee* v. *Williams*, 191 Ark. 643, 87 S. W. 2d 46, we
held that a city is authorized to purchase a water supply
for distribution to its own inhabitants and that the pur-
chase may be made from another municipality. Upon
that reasoning there is no valid objection in the present
case to the four cities' obtaining a water supply from the
Beaver Water District.

II. It is next contended that Amendment 10 to the state constitution prevents the cities from executing two proposed contracts with the Beaver Water District. Amendment 10 requires the fiscal affairs of all cities to be conducted on a sound financial basis and prohibits any city from entering into any contract or incurring any obligation in excess of its revenues for the current fiscal year. By one of the contracts now in question, attached as Exhibit C to the complaint, the city would pledge only its net waterworks revenues to secure the performance of its contract with the Beaver Water District. This contract is valid, for it is well settled that Amendment 10 does not prohibit the creation of a debt exceeding current annual revenues if the debt is secured by and payable solely out of the income or assets of a special and separable activity such as a municipal waterworks. *Williams* v. *Harris,* 215 Ark. 928, 224 S. W. 2d 9.

On the other hand, the contract appearing as Exhibit B to the complaint does not contain any restriction upon the source from which the city's obligations must be paid. By the language of this contract the city would bind itself to purchase water from the Beaver Water District for a period of fifty years. The complaint alleges, and the demurrer admits, that the total purchases under this contract would exceed the current revenues of each city. Under many decisions of this court it must be held that the contract in question is contrary to the provisions of Amendment 10. *Luter* v. *Pulaski County Hospital Association,* 182 Ark. 1099, 34 S. W. 2d 770, and *Williams* v. *Harris, supra.* For this contract to be valid the city's obligation would have to be payable only from the revenues from its municipal waterworks. To this extent the trial court's declaratory judgment upholding the entire proposal must be modified.

III. At least one of the participating cities, Fayetteville, has an outstanding municipal waterworks bond issue. The ordinance creating this bond issue pledged the revenues from the municipal waterworks to the payment of the bonds and provided that surplus revenues

might be used only for prepayment of the bonds or "for making extensions, betterments and improvements to the system." It is now contenedd that the city's pledge of its surplus revenues to the Beaver Water District violates the restrictions contained in this ordinance.

This argument is without merit. What the city is attempting to do is to obtain an additional water supply for its municipal distribution system. It seems too plain for discussion that the proposal constitutes an extension, betterment, or improvement to the existing system. A waterworks cannot be operated without a source of water.

IV. It is insisted that the deed of trust to be executed by Beaver Water District to secure its outstanding bonds goes beyond the authority conferred on the district by Act 114 of 1957, under which the district was created. Specifically, it is contended that the act contemplates that the district will pledge only its net revenues, while in fact the proposed deed of trust contains a pledge of all the district's revenues. Ark. Stats., § 21-1412 (b).

When the deed of trust is read in its entirety we think it is plainly limited to a pledge of net revenues. Although there is some broad language in the granting clause that refers to the district's revenues in general, this language is limited by later provisions in the instrument. By § 305 of the deed of trust the district covenants to keep the mortgaged properties in good condition and to make all needed repairs, replacements, additions, betterments, and improvements. By § 403 it is directed that a sufficient part of the district's revenues be paid each month into an Operation and Maintenance Fund to provide for the expenses of operation and for the repair and maintenance of the district's property. It is then directed by § 404 that after the required monthly deposit has been made in the Operation and Maintenance Fund there shall be deposited sufficient revenues in a Bond Fund to pay the accruing principal and interest of the bonds. Thus when the deed of trust is construed as a

whole it clearly provides for the operation and maintenance of the district's property, so that there is no pledge of gross revenues.

V. We find no merit in the appellants' contention that Act 414 of 1955, Ark. Stats., §§ 19-4239 et seq., is the only authority for two or more municipalities to join together in the acquisition of a water supply. In the first place, § 3 of that act provides that it is cumulative and not a limitation upon other existing laws. Secondly, Act 114 of 1957, authorizing the creation of water distribution districts, is a later statute and is clearly not affected by the provisions of the prior act.

VI. In entering into the proposed arrangement the cities will execute a contract restricting to some extent their future power to borrow money for waterworks improvements and to issue bonds evidencing such loans. This, however, is unavoidable, for in every case when a municipality executes a contract which pledges a part of its revenues it necessarily reduces its ability to borrow additional money in the future. There is no showing in the case at bar that these cities have abused their discretion in entering into the proposed arrangement with the Beaver Water District. In the absence of any facts indicating an abuse of discretion it is not for us to say that the cities should not have entered into an arrangement that appears to be a desirable method of securing an ample water supply for the future. We know, of course, that an abundant source of water is often an essential factor in a municipality's effort to attract new industries.

VII. The final contention is that in making their contracts with the Beaver Water District the cities are not authorized to agree that the water rates to be charged to their consumers will be maintained at a level sufficient to meet the cities' obligations. It is insisted that a city cannot impair its right to fix its water rates in the future, this being a reserved power that cannot be bargained away. *Delony v. Rucker*, 227 Ark. 869, 302 S. W. 2d 287.

It is true that in the absence of statutory authority it has been held that a municipality cannot, in issuing bonds, validly agree that its water rates will not be reduced during the life of the bonds. *Batchelder* v. *Hartwig,* 63 Ore. 472, 128 P. 439. When, however, such an agreement is authorized by statute it may be made by the city and becomes a contract that is protected from impairment. *Karel* v. *City of Eldorado,* D. C. Ill., 32 F. 2d 795; *State ex rel. City of Vero Beach* v. *MacConnell,* 125 Fla. 130, 169 So. 628.

Our statute governing all municipal waterworks provides that the rates to be charged by the municipality must be adequate to pay the principal and interest on all revenue bonds and that rates fixed prior to (and in connection with) the issuance of revenue bonds may be reduced if authorized by the trust indenture or the ordinance pertaining to the bond issue; "provided however the rates shall not be reduced below the standards herein prescribed." Ark. Stats., § 19-4208. Thus it will be seen that the legislature permits the rates to be reduced during the life of the bond issue if the trust indenture or ordinance so provides. It follows that the contracting parties are impliedly authorized to enter into an arrangement which does not so provide, in which case the rates are not subject to reduction during the life of the bonds.

It is our conclusion that the trial court's decree is correct in all respects except for the modification contained in part II of this opinion.

With this modification the decree is affirmed.